UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SCOTT DAVID BELTZ,

          Plaintiff,

    -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

          Defendant.

_____

**DECISION AND ORDER**

**No. 11-CV-00485(MAT)**

## INTRODUCTION

Represented by counsel, Scott David Beltz ("Plaintiff" or "Beltz"), brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Accordingly, this Court hereby grants the Commissioner's motion for judgment on the pleadings.

## PROCEDURAL HISTORY

On December 20, 2006, Plaintiff filed applications for DIB and SSI, claiming disability since July 20, 2005 through July 15, 2009, for a fractured right ankle and bipolar disorder. Administrative Transcript ("Tr.") 87-88, 152-159, 172, 179. Plaintiff's applications were denied on March 21, 2007. Tr. 89-94. At Plaintiff's request, an administrative hearing was conducted in Buffalo, New York on June 4, 2009 before Administrative Law Judge ("ALJ") Bruce R. Mazzarella. Beltz, who was represented by attorney Diane S. Hinman, testified at the hearing, as did vocational expert James A. Phillips ("VE"). Tr. 28-86.

On July 15, 2009, the ALJ denied Plaintiff's application. Tr. 12-27. Beltz requested review of the ALJ's decision, and the Appeals Council denied Plaintiff's request for review on May 4, 2011. Tr. 1-5. This action followed.

## FACTUAL BACKGROUND

Plaintiff has adopted the summary of the relevant medical evidence set forth in Defendant's Memorandum of Law (Dkt. No. 7). See Pl's Mem (Dkt. No. 8-1) at 2. Briefly, Plaintiff suffers from right ankle pain and stiffness as a result of injuries sustained to his right ankle in 1991 and 2005. He has also been diagnosed with bipolar disorder, and has a history of alcohol abuse.

## I. Physical Health History

On April 28, 2005, Plaintiff reported to Sheridan Drive Medical Group ("Sheridan Medical"), complaining that his right ankle was swollen and "giving out" and indicated that he shattered his right ankle in February 1991. Plaintiff was diagnosed with an ankle sprain and Motrin, ice, and a lace-up brace was recommended. Tr. 278. On May 4, 2005 when Plaintiff returned for a follow-up examination, he was able to walk normally with the brace on, stand for long periods of time with the brace off and on, and reported that his ankle did not "giv[e] out" when wearing the brace. Tr. 280. The staff at Sheridan Medical noted that Plaintiff was "ok to work . . . without restrictions." Tr. 280.

Later that same month, Plaintiff had an MRI of his right lower extremity and joint, which showed that the previous fractures "appear[ed] healed with trace amount of high T2 signal intensity along the fibular pin." Tr. 267. The MRI also revealed degenerative joint changes and edema. Tr. 268.

Plaintiff underwent arthroscopic surgery on his right ankle in August 2005. Tr. 374. Post-surgery, on November 14, 2005, Plaintiff presented to John P. Hurley, D.P.M. of Excelsior Orthopaedics ("Excelsior") complaining of right ankle pain. Tr. 303-305. Dr. Hurley diagnosed Plaintiff with arthritis and determined that Plaintiff was "unable to work" and was "unable to or participate in gym/sports." Tr. 305. At a follow-up visit with

Dr. Hurley the following month, Plaintiff continued to complain of pain in his right ankle. Tr. 299-300. Dr. Hurley diagnosed arthritis and instructed Plaintiff to wear a brace for the next four weeks. Tr. 301.

On January 9, 2006, Plaintiff returned to Excelsior, at which time Dr. Hurley diagnosed post-traumatic arthritis secondary to his ankle fracture, and instructed Plaintiff to modify his activities. Tr. 297-298. On that same date, Dr. Hurley also completed an Estimated Physical Capabilities Form, in which he determined that Plaintiff was able to immediately return to work. Tr. 437.

## II. Mental Health History

Plaintiff was admitted to Boulevard Mental Health Offsite ("Boulevard Mental Health") on November 2, 2004, but was discharged on July 12, 2005 after having missed five appointments after his initial admission. Tr. 291. Upon admission, Plaintiff was diagnosed with a global assessment functioning ("GAF") score of 55[1] and bipolar disorder. Plaintiff "refused all recommendations" and stated he was not interested in further treatment. Tr. 292-293.

On November 6, 2006, Plaintiff attended a psychiatric consultation with Harold J. Levy, M.D. Tr. 314-315. Dr. Levy diagnosed Plaintiff with "biploar mixed type with marked personality disorder especially explosive rebellious personality."

---

[1]

A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. See Diagnostic and Statistical Manual of Mental Disorders-Text Revision (DSM-IV), 34 (4th ed., rev. 2000).

Tr. 315.  In a letter dated February 2, 2007, Dr. Levy declined to complete a state agency mental health questionnaire because he did not "have enough information to complete [the] form because [he] [had] seen [Plaintiff] only twice."  Tr. 313.

On February 5, 2007, John Schwab, D.O. performed a consultative internal examination of Plaintiff.  Tr. 317-320.  At that time, Plaintiff's chief complaints were that the medication he was taking for his bipolar disorder was causing seizures, and that his right ankle was swollen, giving out and causing him pain.  Tr. 317.  After an examination, Dr. Schwab diagnosed Plaintiff with bipolar disorder, right ankle pain, seizure disorder secondary to medication, and tobacco abuse.  Tr. 320.  Dr. Schwab opined that Plaintiff should avoid activities that would be unsafe because of his seizure disorder.  He also concluded that Plaintiff had mild restrictions for walking and climbing stairs due to a decreased range of motion in his right ankle.  Tr. 320.

Also on February 5, 2007, psychologist Thomas Ryan, Ph.D. performed a consultative psychiatric evaluation of Plaintiff.  Tr. 322-325.  Based upon his examination of Plaintiff, Dr. Ryan concluded that Plaintiff could follow and understand simple directions, perform simple tasks, and generally maintain attention and concentration.  Tr. 324.  He opined that Plaintiff could maintain a regular schedule, learn new tasks, perform some complex tasks independently unless his physical condition interfered, and,

when psychiatrically stable, make adequate decisions. Dr. Ryan also opined that "at times, [Plaintiff] has difficulty dealing with others and dealing with stress." Tr. 324. According to Dr. Ryan, the "[r]esults of the evaluation [were] consistent with psychiatric problems which may interfere to some degree on a daily basis." Tr. 324.

On February 9, 2007, Plaintiff presented to the emergency room at DeGraff Memorial Hospital complaining of anxiety. Tr. 356-366. Plaintiff was diagnosed with anxiety, and he was instructed to rest and contact his regular doctor. Tr. 359-362. Plaintiff was discharged in stable condition. Tr. 364.

On March 15, 2007, psychologist M. Totin completed a Psychiatric Review Technique ("PRT"), finding that Plaintiff's impairments were not severe. Tr. 326-329. According to Totin, Plaintiff had mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence or pace. Totin also opined that Plaintiff had never experienced repeated episodes of deterioration. Tr. 336.

On November 1, 2007, Plaintiff met with psychiatrist Rebecca S. Phillips, M.D. of Sheridan Medical. At that time, Plaintiff complained that he needed prescription medication, and reported that his mania was more frequent. Tr. 406-407. Dr. Phillips observed that Plaintiff displayed anxiety periodically, but not mania or suspiciousness during their session. Tr. 406. She noted

that Plaintiff's affect was appropriate to his mood, his speech was clear, coherent and fluent, and not overproductive.  She also noted that Plaintiff's memory was intact, and his attention span, concentration, judgment, and insight were improving.  Plaintiff showed no signs of delusions, hallucinations, obsessions, preoccupations, somatic thoughts, or suicidal or homicidal ideation.  Tr. 406.  She assigned Plaintiff a GAF score of 59.  Tr. 407.

Plaintiff saw Dr. Phillips again on January 17, 2008, September 16, 2008, December 8, 2008, and March 9, 2009, and his condition remained unchanged.  Tr. 399-407, 447-448.

On January 6, 2009, Karen Wasiura ("Wasiura"), a licensed clinical social worker ("LCSW"), and Dr. Phillips co-signed a psychiatric assessment report detailing Plaintiff's condition.  Tr. 439-441.  In this assessment, Wasiura and Dr. Phillips opined that Plaintiff was unable to maintain a regular schedule, respond appropriately to supervision, coworkers, usual work situations, and to deal with changes in a routine work setting.  They noted, however, that Plaintiff had shown a better response when working on routine schedules.  Tr. 440.  They concluded that Plaintiff exhibited "marked" impairments in restrictions of activities of daily living, and maintaining concentration, persistence or pace, and that he exhibited "extreme" impairment in social functioning.  Tr. 440-441.  They opined further that Plaintiff experienced

repeated episodes of deterioration when he dropped out of treatment, attempted to hurt himself, missed days of work, missed sleep for days, and disappeared for periods of time. Tr. 441.

Plaintiff met with Wasiura on May 15 and June 2, 2009. Tr. 443-446. During these sessions, Wasiura observed no apparent anxiety, depression or agitation. Tr. 445. She noted that Plaintiff's affect was appropriate, his speech was spontaneous with regular rate, rhythm, and volume, and his thought process was clear and appropriate. Tr. 443-445. Plaintiff's associative thinking was intact, and his attention span and concentration were normal. Tr. 443-445. Wasiura noted further that Plaintiff displayed no delusions, hallucinations, obsessions, preoccupations or somatic thoughts. Tr. 443-445. She assessed a GAF score of 69,[2] and, in June 2009, noted that Plaintiff reported that his symptoms of mania had decreased for the last three months. Tr. 443.

On June 3, 2009, Dr. Phillips assessed that Plaintiff had "moderate" limitations with respect to his ability to understand and remember simple instructions and to carry out simple instructions. Tr. 450. She determined that Plaintiff had "marked" limitations in his ability to make judgments on simple and complex work-related decisions, to understand, remember and carry out complex instructions, and interact appropriately with the public

---

[2]
A GAF score of 61-70 indicates some difficulty in social, occupational, or school functioning. DSM-IV, 34 (4th ed., rev. 2000).

and co-workers.  Tr. 450-451.  She assessed that Plaintiff had "extreme" limitations in his ability to interact appropriately with supervisors.  She also noted that Plaintiff's ability to respond appropriately to work situations and changes in a routine work setting "varie[d]" between "marked" limitation and "extreme" limitation.  Tr. 451.

The additional medical evidence of record is discussed below in further detail, as necessary.

**DISCUSSION**

## I.   Scope of Review

Title 42 U.S.C., Section 405(g) directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  The Court's scope of review is limited to whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim.  See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case *de novo*).

Judgment on the pleadings pursuant to Rule 12(c) may be granted where the material facts are undisputed and where judgment

on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. See generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

## II. The Commissioner's Decision to Deny the Plaintiff Benefits was Supported by Substantial Evidence in the Record

In his July 15, 2009 decision, the ALJ followed the required five-step analysis for evaluating disability claims.[3] Tr. 17-27. Under step 1, the ALJ found that Plaintiff did not engage in substantial gainful activity during the relevant period. Tr. 17. At steps 2 and 3, the ALJ concluded that, during the relevant period, Plaintiff had the severe impairments of right ankle pain and stiffness post fracture and surgery, bipolar disorder, and alcohol abuse, but that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. Tr. 18-19. At steps 4 and 5, the ALJ concluded that Plaintiff had the residual functional capacity

---

[3]

The five-step analysis requires the ALJ to consider the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activities; (3) if the claimant suffers a severe impairment, the ALJ considers whether the claimant has an impairment which is listed in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled; (4) if not, the ALJ considers whether the impairment prevents the claimant from doing past relevant work; (5) if the claimant's impairments prevent his or her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodate the claimant's residual functional capacity and vocational factors, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

("RFC") to sit for an 8 hour workday with only normal breaks and meal periods, stand and/or walk for an 8 hour workday with only normal breaks and meal periods, and lift and carry 20 pounds occasionally and 10 pounds frequently. Additionally, Plaintiff should not climb stairs on more than an occasional basis, and he is limited to a low contact, low stress work environment. Tr. 19-25. Relying on the VE's testimony, the ALJ found that Plaintiff was unable to perform any past relevant work, but that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 25-27.

In the instant proceeding, Plaintiff argues that the ALJ's decision was erroneous and not supported by either the substantial evidence or the applicable law. See Complaint (Dkt. No. 1) at ¶ 10. The Court rejects Plaintiff's argument for the reasons discussed below, and affirms the ALJ's decision denying Plaintiff DIB and SSI.

## III. Analysis of Plaintiff's Arguments

### (A) The ALJ Properly Analyzed and Weighed the Opinion of Treating Psychiatrist Dr. Phillips

Plaintiff asserts that "[t]he ALJ erred by not properly analyzing and weighing the opinions of [his] treating psychiatrist, Rebecca Phillips." See Pl's Mem. at p 5. He argues further that "[t]he ALJ's failure to properly analyze and weigh[] the opinions

of [his] treating psychiatrist, lead to the ALJ giving the opinions inadequate weight." Id. at p 8-9.

Under the Social Security Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); Schisler v. Sullivan, 3 F.3d 563, 567 (2d Cir. 1993). The ALJ may refuse to consider the treating physician's opinion controlling only if he is able to set forth good reason for doing so. Saxon v. Astrue, 781 F. Supp.2d 92, 102 (N.D.N.Y. 2011) (citing 20 C.F.R. § 404.1527(d); Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9, *12 (July 2, 1996) (stating that, when an ALJ's decision is not fully favorable to a claimant, he must provide specific reasons for the weight given to each treating source's medical opinion, supported by record evidence, and must state the reasons for that weight). Where the treating physicians opinion contradicts other substantial evidence in the record, such as the opinions of other medical experts, it is not afforded controlling weight. Williams v. Commissioner of Social Sec., 236 F. App'x 641, 643-44 (2d Cir. 2007); see also Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (citing 20 C.F.R. § 404.1527(d)(2)); Otts v. Commissioner of Social Sec., 249 Fed. App'x. 887, 889 (2d Cir. 2007) (unpublished opn) ("An ALJ . . . may also reject such an

opinion [from a treating source] upon the identification of good reasons, such as substantial contradictory evidence in the record.") (citation omitted). The opinions of non-treating sources such as consulting physicians can constitute substantial evidence and even override the opinions of treating physicians if they are supported by the record. See Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995); Mongeur, 722 F.2d at 1039. Moreover, when a treating physician's opinions are inconsistent with even his own treatment notes, an ALJ may properly discount those opinions. See Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

Here, the ALJ properly afforded less than controlling weight to the opinion of Plaintiff's treating psychiatrist, Dr. Phillips, because, as the ALJ noted (Tr. 23-24), Dr. Phillips' opinion was internally inconsistent with her own treatment notes and was also inconsistent with the opinions of other medical experts.

The record reflects that during Plaintiff's initial visit with Dr. Phillips on November 1, 2007, Plaintiff displayed anxiety periodically, but not mania or suspiciousness. Tr. 406. Dr. Phillips noted that Plaintiff's affect was appropriate to his mood, his speech was clear, coherent, fluent, but not overproductive. She noted further that Plaintiff's thought processes did not demonstrate circumstantial or tangential thinking. According to her, Plaintiff exhibited no delusions, hallucinations, obsessions, preoccupations or somatic thoughts.

Dr. Phillips opined that Plaintiff's memory was intact, and his attention span, concentration, judgment, and insight were improving. Additionally, Plaintiff exhibited no suicidal or homicidal ideation, and no dangerousness. Dr. Phillips assessed a GAF rating of 59, indicating moderate symptoms or difficulty in social or occupational functioning. Tr. 406. Yet, in the January 6, 2009 assessment form she co-signed with Wasiura, she determined that Plaintiff exhibited "marked" impairments in activities of daily living, "extreme" impairments in maintaining social functioning, and affirmatively indicated that Plaintiff's condition resulted in marked difficulties in maintaining concentration, persistence or pace. Tr. 440-441.

To the extent Plaintiff is alleging in the instant proceeding that the ALJ erred in failing to properly afford the opinion of treating therapist Wasiura controlling weight, the Court rejects that contention. According to SSR 06-3p, 2006 SSR LEXIS 5, "only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight." SSR 06-3p, 2006 SSR LEXIS 5. Therapists are defined as "other sources" whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight. 20 C.F.R. 416.913(d)(1). The ALJ "has the discretion to determine the appropriate weight to accord the [other source]'s opinion based on all the evidence

before him." Diaz v. Shalala, 59 F.3d 307, 314 (2d Cir. 1995). In this case, Wasiura was an "other source" under the Regulations and, thus, she could not be a "treating source" for purposes of the treating physician rule. The ALJ did not err in declining to afford Wasiura's assessment greater weight because, as the ALJ noted, her opinion was inconsistent with her own treatment notes. For example, in the January 6, 2009 assessment form she co-signed with Dr. Phillips, she concluded that Plaintiff exhibited either "marked" or "extreme" impairments in activities of daily living, maintaining concentration, persistence, and pace and social functioning. Tr. 440-441. Yet, in May of 2009, Wasiura met with Plaintiff and assigned him a GAF score of 69, indicating only some difficulty in social or occupational functioning. DSM-IV, 34 (4th ed., rev. 2000). Further, she also noted in May of 2009 that she observed no apparent anxiety, depression or agitation in Plaintiff. Tr. 445.

Moreover, Dr. Phillips' opinion was also inconsistent with the opinions of other medical experts in the record, namely, the opinions of Drs. Ryan and Totin. The ALJ supported his RFC determination by referencing, *inter alia*, the opinions of Drs. Ryan and Totin. Specifically, he stated that "[g]reater weight is given to Dr. Ryan's opinions as opposed to Dr. Totin's opinions, as Dr. Ryan's opinions are consistent with [Plaintiff's] presentation and examination." Tr. 24. For example, during a consultative

psychiatric evaluation with Plaintiff on February 5, 2007, Dr. Ryan reported that Plaintiff was cooperative, and his manner of relating, social skills and presentation were adequate. Tr. 323. Dr. Ryan assessed the following: that Plaintiff's speech intelligibility was fluent, and his expressive and receptive language were adequate; his thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia; his affect was "at some range and appropriate to speech and thought content"; his mood was neutral and his sensorium was "clear"; he was oriented to person, place, and time; his attention and concentration were intact and he could do simple calculations and serial 3s; his recent and remote memory skills were intact; his cognitive functioning was in the average range; his insight was fair; and his judgment was fair when stable. Tr. 323-324. Dr. Ryan also noted that Plaintiff was able to dress, bathe, groom himself, do some household chores, and that he sees friends and family. Tr. 324.

Although Dr. Ryan found that Plaintiff's psychiatric problems "may interfere to some degree on a daily basis[,]" (Tr. 324) he did not assess any marked or extreme functional limitations. Rather, he assessed that Plaintiff could follow and understand simple directions, perform simple tasks, and generally maintain attention and concentration. Dr. Ryan also assessed that Plaintiff could maintain a regular schedule, learn new tasks, perform some complex

tasks independently so long as his physical condition did not interfere, and when psychiatrically stable, could make adequate decisions. Tr. 324.

Further, State Agency Review psychologist Dr. Totin's opinion was consistent with Dr. Ryan's findings and opinions. Based on the evidence in Plaintiff's mental health file, Dr. Totin assessed that Plaintiff had "mild" limitations in activities of daily living, social functioning, and maintaining concentration, persistence or pace. Tr. 329, 336, 338. As discussed above, state agency medical consultants are highly qualified physicians who are experts in the evaluation of medical issues in disability claims under the Act, and their opinions constitute expert opinion evidence which can be given weight where, as here, they are supported by medical evidence in the record. See 20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2); SSR 96-6p; Diaz, 59 F.3d at 313, n.5.

Accordingly, the Court rejects Plaintiff's argument that the ALJ erred by not properly analyzing and weighing the opinion of Dr. Phillips.

**(B)  The ALJ Fully Developed the Record**

Plaintiff claims that the ALJ failed to develop the record because he did not re-contact Dr. Phillips for clarification with respect to the inconsistencies between her opinions and her treatment notes. He asserts that "[t]his clarification is necessary in order for the ALJ to properly evaluate Dr. Phillips'

opinions in light of the Plaintiff's bi-polar disorder and Dr. Phillips statement that people with bi-polar disorder exhibit very inconsistent attitudes and behaviors." Pl's Mem at p 8-9.

Indeed, the ALJ has an "affirmative duty to develop the record and seek additional information from the treating physician, sua sponte, even if plaintiff is represented by counsel" to determine upon what information the treating source was basing his opinions. Colegrove v. Comm'r of Soc. Sec., 399 F.Supp.2d 185, 196 (W.D.N.Y.2005); see also 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source . . . does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). Failure to re-contact is error. See Taylor v. Astrue, No. CV-07-3469, 2008 U.S. Dist. LEXIS 46619, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding it error for the ALJ to not re-contact Plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence").

Here, Plaintiff maintains that the ALJ should have re-contacted Dr. Phillips to explain the inconsistencies between her opinion and her treating notes. He asserts that "[i]f the severity of the Plaintiff's symptoms are inconsistent, and if this is common with bi-polar disorder, then any perceived inconsistencies between the opinions of Dr. Phillips and the

treatment notes can be explained." Id. However, the ALJ appropriately determined that Dr. Phillips' opinion was not consistent with other substantial evidence in the record (namely, the findings and opinions of consultative examiner Dr. Ryan and State Agency review consultant Dr. Totin) and was therefore not entitled to controlling weight. This was in accordance with applicable law. See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir.1998); McBrayer v. Sec'y of Health & Human Servs., 712 F.2d 795, 799 (2d Cir. 1983)) ("[A]n ALJ is free . . . to choose between properly submitted medical opinions."). The ALJ's role in weighing the evidence would be "rendered nugatory if, whenever a treating physician's stated opinion is found to be unsupported by the record, the ALJ were required to summon that physician to conform his [or her] opinion to the evidence." Rebull v. Massanari, 240 F.Supp.2d 265, 273 (S.D.N.Y.2002).

Accordingly, this Court finds it was not necessary for the ALJ to re-contact Dr. Phillips to further develop the record or clarify her opinions. The administrative record in this case adequately and completely reflects Plaintiff's medical history. Based on a fully-developed record, the ALJ considered the evidence before him, resolved inconsistencies in the record, and properly determined an RFC that was supported by substantial evidence.

**CONCLUSION**

After careful review of the entire record, this Court finds that the Commissioner's denial of DIB or SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the Court grants Commissioner's motion for judgment on the pleadings (Dkt. No. 6). Plaintiff's motion for judgment on the pleadings is denied (Dkt. No. 8), and Plaintiff's complaint (Dkt. No. 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    July 15, 2013
          Rochester, New York